# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division



FILED
AUG - 1 2018
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

ALTERIK JAMES BAKER,  )
                                        )
        Petitioner,  )
                                          )
v.  )        Civil Action No. 3:17CV657–HEH
                                          )
MR. BEALE,  )
                                          )
        Respondent.  )

## MEMORANDUM OPINION
### (Granting Respondent's Motion to Dismiss)

Alterik James Baker, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1)[1] challenging his convictions of two counts of rape in the Circuit Court of Prince Edward County, Virginia ("Circuit Court"). Respondent has moved to dismiss. (ECF No. 11.) Baker has responded. For the reasons that follow, the Motion to Dismiss will be granted.

## I. APPLICABLE CONSTRAINTS ON FEDERAL HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are

---

[1] The Court corrects the capitalization and spelling in the quotations from the parties' submissions. The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system.

presumed to be correct and may be rebutted only by clear and convincing evidence."

*Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).

Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas

corpus based on any claim that was adjudicated on the merits in state court unless the

adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not

whether a federal court believes the state court's determination was incorrect but whether

that determination was unreasonable—a substantially higher threshold." *Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410

(2000)). Given the foregoing restrictions, the Circuit Court's opinion denying Baker's

petition for a writ of habeas corpus figures prominently in this Court's decision. *Baker v.*

*Manis*, No. CL16000265–00 (Va. Cir. Ct. Aug. 10, 2016) ("*State Habeas Op.*").

## II. PROCEDURAL HISTORY

Baker was indicted on two counts of raping the victim, hereinafter VB.

### A. The Trial

#### 1. VB's Testimony

At trial, VB testified that on December 26, 2013, she was sleeping in her

apartment when she got a call from Baker's girlfriend, Sabrina. (Jan. 6, 2015 Tr. 47.)

Sabrina asked VB if she wanted to have drinks with Baker and her. (Jan. 6, 2015 Tr. 47.)
VB told Sabrina she would be over in a few minutes. (Jan. 6, 2015 Tr. 47.)

VB then went to Sabrina's apartment where she played cards and drank with
Sabrina and Baker. (Jan. 6, 2015 Tr. 48.) While in Sabrina's apartment, VB had one and
a half beers and four or five shots of alcohol. (Jan. 6, 2015 Tr. 48.) After less than an
hour, VB returned to her own apartment and watched TV. (Jan. 6, 2015 Tr. 49, 58.)

Fifteen minutes after returning to her apartment, Baker knocked on VB's door.
(Jan. 6, 2015 Tr. 49.) VB opened the door and Baker asked her for a cigarette. (Jan. 6,
2015 Tr. 49.) VB provided Baker with a cigarette and started to return to her bedroom.
(Jan. 6, 2015 Tr. 49.) Baker then pushed VB over a chair and sought to pull VB's pants
down. (Jan. 6, 2015 Tr. 49–50.) VB repeatedly told Baker "no" and to "stop" and fought
Baker's efforts to remove her pants. (Jan. 6, 2015 Tr. 50–52.) Baker eventually lowered
VB's pants and penetrated her vagina with his penis against her will. (Jan. 6, 2015 Tr.
52.) Although VB does not believe Baker ejaculated, Baker stopped raping VB. (Jan. 6,
2015 Tr. 52.) VB repeatedly asked Baker to leave. (Jan. 6, 2015 Tr. 53.)

After a brief pause, Baker then forced himself on VB again. (Jan. 6, 2015 Tr. 53.)
Baker pulled VB's pants down again against her will, and raped her on a mattress that
was in the living room area of VB's apartment. (Jan. 6, 2015 Tr. 53.) Baker then left
VB's apartment. (Jan. 6, 2015 Tr. 54.) VB acknowledged that she did not have any
visible physical injuries. (Jan. 6, 2015 Tr. 62.)

VB, who was crying, then called Paul Johnson and the manager of the apartment complex. (Jan. 6, 2015 Tr. 54.) VB told the manager and Johnson that Baker had raped her. (Jan. 6, 2015 Tr. 54–55.)

### 2. Johnson's Testimony

Johnson testified that after receiving a call from VB, he went to her apartment. (Jan. 6, 2015 Tr. 65.) When VB answered the door, she began crying and stated that Baker had raped her. (Jan. 6, 2015 Tr. 65.) Baker, who was standing in the hallway of the apartment complex, sought to talk to Johnson. (Jan. 6, 2015 Tr. 65.) Baker told Johnson that he did not rape VB, but Johnson "might be mad at [him]" and "might want to take a swing at [him]." (Jan. 6, 2015 Tr. 65.)

Johnson then elicited VB's full version of the events. (Jan. 6, 2015 Tr. 65.) Thereafter, Johnson went back into the hallway to speak to Baker. (Jan. 6, 2015 Tr. 65–66.) Baker insisted that the sex was consensual, but that Johnson might want to take a swing at him. (Jan. 6, 2015 Tr. 66.) Baker then got on his knees and encouraged Johnson to take a swing at him. (Jan. 6, 2015 Tr. 66.) Johnson declined and stated he would let the police handle the situation. (Jan. 6, 2015 Tr. 66.)

### 3. Other Testimony that Corroborated VB's Account

Detective Samuel Entrekin spoke with Baker on the night of the rape. (Jan. 6, 2015 Tr. 73.) Baker told Detective Entrekin multiple times that he did not have sex with VB. (Jan. 6, 2015 Tr. 73.) When Detective Entrekin spoke with VB, he could smell alcohol on her person, but her thought and speech were reasonably clear. (Jan. 6, 2015 Tr. 83.)

4

Theresa Francis, an expert in DNA analysis, testified that the police recovered VB's DNA from Baker's boxer shorts. (Jan. 6, 2015 Tr. 84–91.)

### 4. Baker's Testimony

Baker acknowledged drinking with VB and Sabrina on the day in question. (Jan. 6, 2015 Tr. 95–96.) According to Baker, however, Sabrina passed out, "vomited everywhere" and he and VB had to put her in the bathtub to clean her up. (Jan. 6, 2015 Tr. 96.) VB left Sabrina's apartment, but told Baker that she would be back to help him clean Sabrina up. (Jan. 6, 2015 Tr. 96.) When VB did not return, Baker went to VB's apartment and asked her for a cigarette. (Jan. 6, 2015 Tr. 97.) VB then got Baker a cigarette. (Jan. 6, 2015 Tr. 97.) According to Baker, VB then bent over the chair, pulled her pants down and encouraged him to have sex with her, which he did. (Jan. 6, 2015 Tr. 97.)

Baker then said he began to regret his actions and got up to leave. (Jan. 6, 2015 Tr. 97.) According to Baker, VB then "laid on the floor on the mattress and said, if you don't finish this I'm going to call the cops and say you raped me." (Jan. 6, 2015 Tr. 97.) Baker refused and left. (Jan. 6, 2015 Tr. 97.)

Baker later encountered Paul Johnson in the hallway and told him he had sex with VB. (Jan. 6, 2015 Tr. 98.) VB, however, intervened and told Johnson that Baker had tried to rape her. (Jan. 6, 2015 Tr. 98.) Baker acknowledged denying having sex with VB to the police. (Jan. 6, 2015 Tr. 99.) Baker explained that he did not want Sabrina to find out that he had had sex with VB. (Jan. 6, 2015 Tr. 99.) Baker insisted that VB had repeatedly flirted with him. (Jan. 6, 2015 Tr. 100.)

## B. Verdict and Sentencing

The jury found Baker guilty of both counts of rape and sentenced him to ten years of imprisonment on each count.

## C. Appeals and Post-Conviction Proceedings

Following his conviction and sentencing, Baker unsuccessfully appealed his conviction to the Supreme Court of Virginia. *Baker v. Commonwealth*, No. 151726 (Va. Feb. 8, 2016).

Thereafter, Baker filed a petition for a writ of habeas corpus with the Circuit Court. *State Habeas Op.* 1. The Circuit Court denied his petition. *Id.* at 15. Baker appealed, and the Supreme Court of Virginia refused his appeal. (ECF No. 13, at 4.)

## III. BAKER'S FEDERAL HABEAS CLAIMS

In his § 2254 Petition, Baker demands relief upon the following grounds:

| | |
|---|---|
| Claim 1 | The evidence was insufficient to support Petitioner's two convictions of rape. (ECF No. 1, at 5.) |
| Claim 2 | Petitioner was denied the effective assistance of counsel during the pretrial stages:<br>(a) Counsel failed to investigate Petitioner's history including "department of social services records" and "severe family problems." (ECF No. 1–6, at 1);<br>(b) "Counsel failed to request . . . an examination to determine whether [Petitioner was] competent to stand trial . . . ." (*Id.*);<br>(c) "Counsel failed to investigate into [Petitioner's] school history . . . ." (*Id.*);<br>(d) "Counsel failed to obtain [the] complete medical report of" the victim. (*Id.*);<br>(e) "Counsel failed to investigate the relationship between [the victim] and Paul Johnson . . . ." (*Id.* at 2);<br>(f) Counsel should have obtained the victim's cell phone, which contained a recording of the victim flirting with Petitioner. (*Id.*); |

(g) "Counsel failed to investigate [the victim's] prior history [as] a 'Party Girl,' a person who enjoys drinking and casual sexual encounters." (*Id.*);

(h) "Counsel failed to inform the Petitioner [about] the nature of the preliminary hearing and waived said hearing without the Petitioner's knowledge or consent." (*Id.*);

(i) "Counsel failed to investigate the theory of 'post sex remorse' as a possible defense." (*Id.*);

(j) "Counsel failed to . . . move to exclude and/or obtain an independent forensic DNA expert." (*Id.* at 3.);

(k) Counsel failed to report to the court that he had a conflict of interest created by his limited budget, overburdened case load, lack of communication with Petitioner, and financial inability to adequately defend Petitioner. (*Id.*); and,

(l) Counsel's limited budget "caused him to fail to conduct an adequate pre-trial investigation . . . ." (*Id.*)

Claim 3    Petitioner failed to receive the effective assistance of counsel during the trial when:

(a) Counsel failed to adequately cross-examine the victim about the lack of physical evidence to support her allegations. (*Id.* at 3–4.);

(b) Counsel failed to adequately cross-examine the victim about: (i) the amount of alcohol she consumed; (ii) her past sexual history; (iii) her relationship with Mr. Johnson; and (iv) "that her allegations were a result of 'post sex remorse.'" (*Id.*);

(c) Counsel failed to adequately cross-examine Mr. Johnson about the victim's unchaste history, his relationship with the victim, and how inebriated the victim was on the day of the rape. (*Id.*);

(d) Counsel failed to adequately cross-examine the prosecution's DNA expert. (*Id.*); and,

(e) Counsel failed to argue his motion to strike at the end of the prosecution's case. (*Id.* at 4–5.)

Claim 4    Petitioner failed to receive the effective assistance of counsel at the end of the guilt phase and after the guilt phase when:

(a) Counsel failed to renew his motion to strike at the end of the defense's case. (*Id.* at 5.);

(b) Counsel failed to request that the jury be instructed on running Petitioner's sentences concurrently. (*Id.* at 6.); and,

(c) The cumulative effect of counsel's errors denied Baker the effective assistance of counsel. (*Id.*)

In a Motion to Supplement, that was submitted contemporaneously with his

§ 2254 Petition, Baker raises the following additional claims:

Ground One    The indictments in Petitioner's case were inadequate because they were identically worded. (ECF No. 3–1, at 2.)

Ground Two    Petitioner's rights under the double jeopardy clause were violated "when he was tried, convicted and sentenced . . . on identical counts of a single offense alleged in two separate indictments." (*Id.* at 3.)

Ground Three  "The trial judge constructively denied [Petitioner] effective assistance of counsel before, and at trial, and every critical stage of the proceedings." (*Id.* at 16.)

Respondent asserts that Baker has procedurally defaulted Claims 1, 2(a)–(c), and

Grounds One through Three. In a somewhat discordant fashion, Baker suggests that the

ineffective assistance of counsel constitutes cause to excuse his defaults. As explained

more fully, given the utter lack of merit of Claims 2(a)–(c), judicial efficiency dictates

simply proceeding to the merits of these ineffective assistance of counsel claims. *See*

*Martinez v. Ryan*, 566 U.S. 1, 21–22 (2012) (Scalia, J., dissenting) (emphasis omitted)

(observing that as "a consequence of today's decision the States will always be forced to

litigate in federal habeas, for all defaulted ineffective-assistance-of-trial-counsel claims

(and who knows what other claims) . . . the validity of the defaulted claim (where

collateral-review counsel was not appointed)"). Furthermore, as explained below, Baker

fails to demonstrate that the ineffective assistance of counsel constitutes cause to excuse

his defaults.

## IV. EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S.

364, 365–66 (1995)). Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[2] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of "cause for the default and actual prejudice as a result of the

---

[2] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

Here, Baker defaulted Claim 1 and Grounds One through Three by, *inter alia*, failing to properly raise them at trial and on direct appeal. Were Baker to now attempt to present these claims to the Supreme Court of Virginia, that court would find the claims barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), because these claims could have been, but were not, raised on direct appeal. *Slayton* is an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Baker contends that the ineffective assistance of counsel constitutes cause which excuses his default. As explained below, that contention lacks merit.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for

11

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

## A. Challenges to the Sufficiency of the Evidence

Baker contends that the ineffective assistance of counsel constitutes cause to excuse his default of his challenge to the sufficiency of the evidence alleged in Claim 1.[3] As explained below, Baker fails to demonstrate any prejudice.

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

Baker cannot demonstrate any prejudice because ample evidence supported his convictions of two counts of rape. It was undisputed that Baker had sex with VB.

---

[3] Although trial counsel moved to strike the evidence at the close of the prosecution's case, he failed to renew the motion after the defense put on evidence. *State Habeas Op.* 1.

Although Baker asserted that such intercourse was consensual, VB credibly disputed that assertion. VB's account of the crimes was consistent with her actions following the rape. Accordingly, because Baker fails to demonstrate prejudice under *Strickland*, Claim 1 will be dismissed. Relatedly, Baker fails to demonstrate that he was prejudiced by counsel's failure to renew his motion to strike at the end of the trial. Accordingly, Claims 3(e) and 4(a) will be dismissed.

### B. Alleged Pretrial Ineffective Assistance

In Claim 2(a), Baker faults counsel for failing to investigate his personal history including "department of social services records" and "severe family problems." (ECF No. 1–6, at 1). Relatedly, in Claim 2(c) Baker complains that counsel did not produce Baker's school records. Baker fails to produce any of these records or credibly explain how this information would excuse his raping VB or somehow warrant a lesser sentence. Accordingly, Claim 2(a) and 2(c) will be dismissed because Baker fails to demonstrate deficiency or prejudice.

In Claim 2(b), Baker complains that "[c]ounsel failed to request for an examination to determine whether [Baker was] competent to stand trial . . . ." (*Id.*) Baker, however, fails to direct the Court to any circumstances that should have alerted counsel that Baker was incompetent. Moreover, the Circuit Court's colloquy with Baker and Baker's trial testimony indicate that Baker was competent. Accordingly, Claim 2(b) will be dismissed because Baker fails to demonstrate deficiency or prejudice.

In Claim 2(d), Baker complains that "[c]ounsel failed to obtain [the] complete medical report of" the victim. (*Id.* at 1.) In rejecting this claim on state habeas, the Circuit Court observed,

> counsel received all documents through a request for discovery. There were no medical reports available stating there was no physical evidence to support forced sexual intercourse. [VB] testified on cross-examination that she did not receive any physical injuries. (Jan. 6, 2015 Tr. 62; Affidavit of Counsel. Respondent's Exhibit B). Moreover, the petitioner has failed to produce any such report. His failure to do so is fatal to his claim. *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). *See also Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (petitioner must allege "what an adequate investigation would have revealed.") "[W]ithout a *specific, affirmative* showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'" *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)) (emphasis added). Under these circumstances, the petitioner cannot meet his burden under either prong of the *Strickland* test.

*State Habeas Op.* 8–9 (second alteration in original). The Circuit Court's decision in this regard was eminently reasonable. *See* 28 U.S.C. § 2254(d)(1) & (2). Accordingly, Claim 2(d) will be dismissed.

In Claim 2(e), Baker complains that "counsel failed to investigate the relationship between [VB] and Paul Johnson . . . ." (ECF No. 1–6, at 2.) Baker contends that if counsel had investigated this relationship, he would have discovered: that Johnson and VB had a romantic relationship; that Johnson lied to the police; and, that Baker told Johnson his sexual encounter with VB was consensual. (*Id.*) This claim is meritless. VB

readily acknowledged that she had a sexual relationship with Johnson. Additionally, Johnson acknowledged that Baker claimed his sexual encounter with VB had been consensual. Further, "there was no evidence to suggest Johnson's statement to [the] police was false." *State Habeas Op.* 9 (citing counsel's affidavit). Further, Baker provides no factual support for his allegation that the sexual encounter with VB was consensual. Accordingly, Claim 2(e) will be dismissed because Baker fails to demonstrate deficiency or prejudice.

Baker raises a basket of claims wherein he faults counsel for failing to investigate Baker's story that VB was a loose woman and had been flirting with Baker. In Claim 2(f), Baker faults counsel for failing to obtain Baker's cell phone which allegedly had a video of VB flirting with Baker. (ECF No. 1–6, at 2.) Next, in Claim 2(g), Baker complains that "[c]ounsel failed to investigate [VB's] prior history [as] . . . a person who enjoys drinking and casual sexual encounters." (*Id.*) In Claim 2(i), Baker complains that "[c]ounsel failed to investigate the theory of 'post sex remorse' as a possible defense." (*Id.*). These claims lack factual and legal merit:

> counsel obtained the cell phone referred to by the petitioner and reviewed the entire recording. (Respondent's Exhibit B). Counsel investigated the victim's history, "post sex remorse," and statistics on alleged rapes resulting [in] injuries and those that did not. (Respondent's Exhibit B). Petitioner's defense was that intercourse was consensual and that defense was asserted at trial. No evidence supported the petitioner's claim that [VB] was flirting or had a "party girl" reputation. (Respondent's Exhibit B). Counsel asked for the names of petitioner's potential witnesses and interviewed all of them. Nothing out of the ordinary was discovered about [VB] and her relationship with the petitioner's cousin. (Respondent's Exhibit B.) Johnson admitted having a romantic relationship with [VB]. Petitioner has presented no affirmative evidence supporting his claims, nor

demonstrated how the additional evidence would have furthered his defense. *Beaver*, 93 F.3d at 1195; *Bassette*, 915 F.2d at 940–41.

*State Habeas Op.* 9–10. The Circuit Court reasonably rejected these claims as Baker failed to demonstrate deficiency or prejudice. *See* 28 U.S.C. § 2254(d)(1) & (2). Claims 2(f), 2(g), and 2(i) will be dismissed.

In Claim 2(h), Baker complains that "[c]ounsel failed to inform the Petitioner [about] the nature of the preliminary hearing and waived said hearing without the Petitioner's knowledge or consent." (ECF 1–6, at 2.) Baker's complaint is factually baseless:

> counsel and the court informed the petitioner of the nature of a preliminary hearing and counsel discussed with the petitioner the benefit to him of waiving [the] preliminary hearing. He did so in writing as reflected on the back of the warrant. (Respondent's Exhibit B). The petitioner's allegation is refuted by the record and fails to demonstrate deficient performance. Moreover, the petitioner has presented no affirmative evidence nor demonstrated how the preliminary hearing would have aided his defense. He thus fails to prove prejudice. *Beaver*, 93 F.3d at 1195; *Bassette*, 915 F.2d at 940–41.

*State Habeas Op.* 10. Because Baker fails to demonstrate deficiency or prejudice, Claim 2(h) will be dismissed.

In Claim 2(j), Baker complains that "[c]ounsel failed to . . . move to exclude and/or obtain an independent forensic DNA expert." (ECF No. 1–6, at 3.) "[C]ounsel did not request an independent DNA expert because the DNA findings presented at trial were consistent with the petitioner's defense of consensual intercourse. (Respondent's Exhibit B). The petitioner has presented no affirmative DNA evidence or demonstrated

16

how it would have aided his defense." *State Habeas Op.* 10. Given these circumstances,

Baker fails to demonstrate deficiency or prejudice. Claim 2(j) will be dismissed.

In Claim 2(k), Baker complains that counsel failed to report to the court that he

had a conflict of interest created by his limited budget, overburdened case load, lack of

communication with Baker, and financial inability to adequately defend Baker. (ECF

No. 1–6, at 3.) In rejecting this claim, the Circuit Court found that,

> counsel was not overburdened by his caseload. (Respondent's Exhibit B).
> The petitioner has failed to proffer any additional evidence or strategy
> counsel might have developed if counsel had had more time. His
> conclusory, self-serving allegation is insufficient to support habeas corpus
> relief. *See Elliott*, 274 Va. at 613, 652 S.E.2d at 480. *See Beaver*, 93 F.3d
> at 1195; *Bassette*, 915 F.2d at 940–41.

*State Habeas Op.* 11.

Further, Baker has not submitted any evidence to substantiate his assertion that

counsel had a conflict of interest. To demonstrate ineffective assistance of counsel based

on a conflict of interest, Baker "must establish that an actual conflict of interest adversely

affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). If

Baker demonstrates that his counsel labored under an actual conflict of interest and that

counsel's conflict adversely affected counsel's performance, a presumption of prejudice

arises. *See Stephens v. Branker*, 570 F.3d 198, 209 (4th Cir. 2009) (citing *Strickland*, 466

U.S. at 692).

The mere "possibility of [a] conflict [of interest] is insufficient to impugn a

criminal conviction." *Cuyler*, 446 U.S. at 350. To demonstrate an actual conflict of

interest exists, Baker "must show that [his] interests diverge[d] [from his attorney's] with

respect to a material factual or legal issue or to a course of action." *Stephens*, 570 F.3d at 209 (alterations in original) (some internal quotations marks omitted) (quoting *Gilbert v. Moore*, 134 F.3d 642, 652 (4th Cir. 1998)). He has not done so. Baker fails to demonstrate that his interests and counsel's diverged. Further, Baker fails to demonstrate that any conflict adversely affected counsel's performance. Accordingly, Claim 2(k) will be dismissed because Baker fails to demonstrate deficiency, or prejudice, or a conflict of interest.

In Claim 2(l), Baker contends that counsel's inadequate budget prevented counsel from interviewing VB's downstairs neighbor to discover if anyone witnessed or heard anything. Once again, Baker fails to make an adequate proffer of what exculpatory information that investigation would have yielded. Thus, Baker demonstrates neither deficiency nor prejudice. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation"); *Bassette*, 915 F.2d at 941. Accordingly, Claim 2(l) will be dismissed.

## C. Alleged Ineffective Assistance at Trial

In Claim 3(a), Baker complains that counsel failed to adequately cross-examine VB regarding the lack of physical evidence to support her allegations. (ECF No. 1–6, at 3–4.) Relatedly in Claim 3(b), Baker complains that counsel failed to adequately cross-examine VB about: (i) the amount of alcohol she consumed; (ii) her past sexual history; (iii) her relationship with Mr. Johnson; and (iv) "that her allegations were a result of 'Post Sex Remorse.'" (*Id.*) "[C]ounsel's examination was not deficient. Counsel cross-

examined the victim about her alcohol consumption and presented photos of alcohol bottles in her apartment, and her lack of injuries." *State Habeas Op.* 12. Further, VB readily admitted that she had had sex with Mr. Johnson two days prior to the rape. (Jan. 6, 2015 Tr. 55.) Counsel reasonably perceived nothing was to be gained by suggesting VB was a "'Party Girl'" and that her assertion of rape was the product of "'post sex remorse.'" (ECF No. 1–6, at 3–4.) Accordingly, Claims 3(a) and 3(b) will be dismissed because Baker fails to demonstrate deficiency or prejudice.

In Claim 3(c), Baker complains that counsel failed to adequately cross-examine Mr. Johnson about the victim's unchaste history and how inebriated the victim was on the day of the rape. (*Id.*) Counsel did question Mr. Johnson about his relationship with VB. (Jan. 6, 2015 Tr. 68.) Baker fails to demonstrate that pressing Mr. Johnson about VB's sexual history or her state of inebriation on the night of the assault were likely to result in information favorable to the defense. Accordingly, Claim 3(c) will be dismissed because Baker fails to demonstrate deficiency or prejudice.

In Claim 3(d), Baker contends that counsel failed to adequately cross-examine the prosecution's DNA expert. (ECF 1–6, at 4.) Given that the DNA expert's testimony was consistent with the defense theory of consensual sexual intercourse, Baker fails to demonstrate how further cross-examination of the expert could have resulted in information favorable to the defense. Claim 3(d) will be dismissed because Baker fails to demonstrate deficiency or prejudice.

In Claim 4(b), Baker faults counsel for not having the jury instructed that it could recommend to have his sentences run concurrently. Virginia law does not permit such an

instruction. *State Habeas Op.* 13 ("The petitioner was not entitled to have the jury instructed on concurrent sentencing; that is a judicial function."). As Baker fails to demonstrate deficiency or prejudice, Claim 4(b) will be dismissed.

In Claim 4(c), Baker contends the cumulative effect of counsel's errors denied him the effective assistance of counsel. As Baker fails to demonstrate that counsel acted deficiently in any instance, he cannot demonstrate the cumulative effective of these non-errors resulted in prejudice. *See Fisher v. Angelone*, 163 F.3d 835, 852 n.9 (4th Cir. 1998). Claim 4(c) will be dismissed.

### D. Defaulted Claims

In the defaulted claims in his Motion to Supplement, Baker complains that his indictments were somehow defective. First, in Ground One, Baker contends the two indictments were inadequate and confusing because they both charged rape on the same day. In Virginia, "[a]n indictment is sufficient if it gives the accused 'notice of the nature and character of the offense charged so he can make his defense.'" *Satcher v. Virginia*, 421 S.E.2d 821, 828 (Va. 1992) (quoting *Wilder v. Virginia*, 225 S.E.2d 411, 413 (Va. 1976)).[4] The Indictments in Baker's case easily met this standard (ECF Nos. 1–4, 1–5),

---

[4] The pertinent statute provides that:

The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date. In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged.

therefore counsel reasonably eschewed the challenge Baker urges here. As Baker fails to demonstrate the ineffective assistance of counsel constitutes cause to excuse his default, Ground One will be dismissed.

Next, in Ground Two, Baker contends that his conviction for two separate counts of rape violates the Double Jeopardy Clause. Baker is wrong. "To the victim, each rape was readily divisible and intensely personal; each offense is an offense against a person. Given the nature of this kind of offense, there is good reason to avoid giving a defendant a 'free rape' merely because he chooses to repeat his crime on the same victim within a short period of time." *Carter v. Virginia*, 428 S.E.2d 34, 42 (Va. Ct. App. 1993) (citations omitted) (internal quotation marks omitted). Accordingly, counsel reasonably eschewed pursuing Baker's Double Jeopardy challenge. Ground Two will be dismissed.

In Ground Three, Baker contends that his relationship with trial counsel was so strained that he suffered a constructive denial of the assistance of counsel. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland*, 466 U.S. at 692. This presumption of prejudice applies when "there was a breakdown in the adversarial process," *United States v. Cronic*, 466 U.S. 648, 662 (1984), "such that 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.'" *Wright v. Van Patten*, 552 U.S. 120, 124 n.* (2008) (quoting *Cronic*, 466 U.S. at 659)); *see Lenz v. Washington*, 444 F.3d 295, 303–04 (4th Cir. 2006) (internal quotation marks and citations omitted) (stating that a constructive

---

Va. Code Ann. § 19.2–220 (West 2018).

denial of counsel "arises only when a lawyer entirely fails to subject the prosecution's case to meaningful adversarial testing, and thus might as well be absent from the proceedings").

The Supreme Court emphasized that "[f]or purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, [the] difference is not degree but of kind." *Bell v. Cone*, 535 U.S. 685, 697 (2002). "In the wake of *Bell*, courts have rarely applied *Cronic*, emphasizing that only non-representation, not poor representation, triggers a presumption of prejudice." *Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007) (citing *United States v. Theodore*, 468 F.3d 52, 57 (1st Cir. 2006); *United States v. White*, 341 F.3d 673, 679 (8th Cir. 2003); *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998)). The Supreme Court indicated that a claim that "counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole" would fall under the rule of *Cronic*, but a claim that "counsel failed to [challenge the prosecution] at specific points" during sentencing would fall under *Strickland*. *Bell*, 535 U.S. at 697; *see White*, 341 F.3d at 679 (observing that *Cronic* applies only when "counsel completely failed to participate in the proceedings"); *Jackson*, 150 F.3d at 525 (concluding *Cronic* governs claims only when "counsel 'was not merely incompetent but inert'" (quoting *Childress v. Johnson*, 103 F.3d 1221, 1228 (5th Cir. 1997))).

Here, counsel actively participated in the whole trial and tested the prosecution's case with adroit cross-examination and the presentation of evidence in support of the defense. Baker simply fails to demonstrate that he was constructively denied the

effective assistance of counsel. Accordingly, Ground Three lacks merit and will be dismissed.[5]

In his supplemental responses, (ECF No. 32, 33) Baker advances some additional critiques of counsel's performance. In no instance has Baker demonstrated counsel performed deficiently or that he was prejudiced.

## VI. CONCLUSION

Baker's claims will be dismissed. The Motion to Dismiss (ECF No. 11) will be granted. Petitioner's Motion for an Evidentiary Hearing (ECF No. 25) will be denied. The § 2254 Petition will be denied. The action will be dismissed. The Court will deny a certificate of appealability.

An appropriate Order will accompany this Memorandum Opinion.

/s/

HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: July 31, 2018
Richmond, Virginia

---

[5] Baker's contention the counsel had a conflict of interest lacks merit for the reasons discussed in conjunction with Claim 2(k).